USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/15/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M.C. and L.K., individually and on behalf of C.C.,

Plaintiff,

-against-

THE NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

14 Civ. 6968 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs, M.C. and L.K., (the "parents" or "plaintiffs") individually and on behalf of their son, C.C., bring this case against the New York City Department of Education ("DOE") under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §1400, *et seq*. Plaintiffs seek for this court to declare C.C.'s Individualized Education Plan ("IEP") inappropriate, to declare that C.C. was not provided with a Free Appropriate Public Education ("FAPE"), and to remand the case to the Impartial Hearing Officer ("IHO") for a determination of Prongs II and III of the *Burlington/Carter* Test. On April 24, 2015, both parties cross-moved for summary judgment. For the following reasons, Defendant's motion is GRANTED and Plaintiffs' motion is DENIED.

## FACTS

C.C., who is currently eight years old, has Asperger's Disorder and Attention-Deficit Hyperactivity Disorder ("ADHD"). (Def. Ex. 4 at 8-9.)[1] C.C. attended the Gramercy

[1] "Def. Ex." and "Pls. Ex." refer to the DOE's and Plaintiffs' exhibits, respectively, submitted to the IHO and included in the administrative record. "Tr." refers to the IHO hearing transcript, also included in the record.

School for preschool during the 2011-2012 school year, where he was in a 12:1:2 (twelve students, one teacher, two paraprofessionals) classroom, with occupational therapy and counseling services. (Def. Ex. 6 at 1.)

On March 1, 2012, a Committee on Preschool Special Education ("CPSE"), in an annual review, developed an IEP (the "March 12 IEP") for C.C. for the remainder of the 2011-2012 school year. (Pls. Ex. C at 1, 3 & 14-16.) The CPSE was composed of C.C.'s special education teacher at the Gramercy School, C.C.'s father, and two additional members. (*Id.* at 2.) The CPSE recommended a 12-month school year program in a 12:1:2 classroom with occupational therapy and counseling services. (*Id.* at 1 & 14-16.)

On April 7, 2012, Plaintiffs signed a contract enrolling C.C. at the Lang School for the 2012-2013 school year. (Pls. Ex. J at 3.) Plaintiffs payed a $12,500 deposit and the remainder of tuition ($49,500) was due on August 15, 2012. (*Id.* at 1.) These payments were fully refundable if Plaintiffs accepted placement from the DOE and notified the Lang School by September 1, 2012, but Plaintiffs would forfeit the $12,500 deposit if the Lang School was not notified by October 1, 2012. (*Id.* at 1-2).

On April 11, 2012, a Committee on Special Education (the "April CSE") conducted C.C.'s "turning five" conference to develop an IEP (the "IEP") for the 2012-2013 school year, C.C.'s kindergarten year. (*See* Pls. Ex. B, at 1, 5-6 & 9-10.) The April CSE was composed of a special education teacher, a parent member, a school psychologist/district representative, a general education teacher, a parent advocate, and C.C.'s mother. (*Id.* at 12.) The April CSE reviewed: (i) an evaluation from the NYU Child Study Center; (ii) a social history; (iii) educational, counselling, and occupational therapy progress reports; and (iv) the March 12 IEP, which C.C.'s special education teacher helped craft. (*See* Pls. Ex. B & C.) The April CSE only diverged from the CPSE in recommending a 12:1:1, rather than a 12:1:2, setting.

(*See* Pls. Ex. B & C; IHO Decision at 8-9.) The April CSE otherwise produced identical conclusions, goals, and recommendations as the CPSE. (*Id.*)

On April 30, 2012, after participating in the April CSE, C.C.'s mother sent a letter to the CSE, informing them that she had signed the contract with the Lang School. (Pls. Ex. F.) C.C.'s mother stated that if an appropriate placement or program was not offered, she would unilaterally place C.C. in the Lang School and seek tuition reimbursement at the public's expense. (*Id.*) She requested that she receive a placement letter for C.C. by June 15, 2012, so that she could visit the assigned placement to decide if it met C.C.'s needs. (*Id.*)

On May 21, 2012, DOE sent Plaintiffs a final notice of recommendation ("P.S. 11 FNR"), identifying P.S. 11 as the school to which C.C. had been assigned and which would implement his IEP. (Def. Ex. 13.) Plaintiffs visited P.S. 11 on June 1, 2012 and felt that it was "not appropriate" for C.C. (Pls. Ex. G at 1.) Specifically, Plaintiffs stated that they spoke with the principal of P.S. 11, who told them that C.C. "did not seem like the right fit", that C.C. would be the only kindergartener in a class of second graders, that the class may be cancelled,[2] and that the students in the proposed class "functioned at a very low level." (*Id.*) Plaintiffs also stated that P.S. 11 was "too large and noisy for [C.C.'s] sensory and ADHD issues." (*Id.*) Plaintiffs reiterated to the district their intention to unilaterally place C.C. at the Lang School and seek tuition reimbursement "[i]f an appropriate program/placement is not offered in a timely manner for the 2012-13 school year." (*Id.*)

On June 19, 2012, Plaintiffs filed a due process complaint with the DOE seeking tuition reimbursement for the Lang School, alleging that, due to substantive and procedural defects, the district had failed to offer C.C. a FAPE for the 2012-2013 school year. (Pls. Ex. A

[2] In response to this allegation, DOE official Eric Contreras, at the IHO hearing, testified that the district had informed Plaintiffs that P.S. 11 was prepared to accept C.C. and accommodate C.C. (Tr. 275-76.)

at 1-4.) An impartial hearing commenced before Impartial Hearing Officer Dora Lassinger ("IHO") on August 20, 2012. (IHO Decision at 4.)

In an FNR dated August 31 and mailed September 5, 2012 ("P.S. 2 FNR"), the district identified a second public school site to which C.C. could be assigned ("P.S. 2"). (Pls. Ex. M at 1-2.) After touring the second offered placement on September 14, 2012, Plaintiffs rejected P.S. 2 as well, stating that it was inappropriate because C.C. would not be appropriately functionally grouped, P.S. 2 could not implement the IEP, and the school was "too large and overwhelming." (Pls. Ex. D at 5-6; Pls. Ex. R) Plaintiffs also asserted that the second FNR was untimely. (*Id.*)

Plaintiffs filed an amended complaint before the IHO on September 14, 2012. (Def. Ex. D.) The IHO heard testimony over five nonconsecutive days from November 5, 2012 to January 4, 2013. (IHO Decision at 4.) On February 26, 2013, the IHO held that the district had offered C.C. a FAPE for the 2012-2013 school year. (IHO Decision at 19-23.) The IHO found that, though the April CSE was procedurally deficient, the procedural violations did not result in failure to offer a FAPE. (*Id.* at 20-22.) The IHO further found that the April 2012 IEP was substantively appropriate, the assigned public school sites could implement the IEP, and the student would be appropriately grouped. (*Id.* at 22-24.) With regard to the adequacy of P.S. 11, the IHO "attach[ed] no weight to the hearsay statement of a principal." (*Id.* at 24.) After Plaintiffs appealed for state-level review, the State Review Officer ("SRO") upheld the IHO's decision on April 30, 2014. (SRO Decision at 27.) Neither the IHO nor the SRO reached Prongs II or III of the *Burlington/Carter* Test. On August 27, 2014, Plaintiffs filed a complaint in this Court seeking review of the SRO's determination. (Dkt. No. 1.)

## LEGAL STANDARD

Congress enacted the IDEA to promote education for students with disabilities. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 238-39 (2009). The statute provides that children with disabilities must receive a FAPE at public expense and that the education services must meet the standards of the state education agency and be sufficiently individualized to each student through an IEP. *See* 20 U.S.C. §§ 1400(d)(1)(A), 1401(9).

### A. Procedure Generally

In New York, a local CSE, consisting of school board representatives, educators, clinicians, and parents, is responsible for formulating each student's IEP. N.Y. Educ. Law § 4402. If a parent is dissatisfied with an IEP, the IDEA allows the parent to challenge the child's placement. 20 U.S.C. § 1415(b)(6)(A). After filing a due process complaint challenging the IEP, the parent is entitled to a hearing before an IHO. In New York, the IHO's decision may be appealed to an SRO in the Department of Education, which independently reviews the IHO's decision. N.Y. Educ. Law § 4404. An SRO's decision is considered final and a party may challenge it in federal court. 20 U.S.C. §1415(i).

IDEA actions in federal court are customarily resolved on summary judgment. *C.L. v. Scarsdale Union Free Sch. Dist.*, 913 F. Supp. 2d 26, 32 (S.D.N.Y. 2012) (CS). In this context, summary judgment "involves more than looking into disputed issues of fact; rather, it is a pragmatic procedural mechanism for reviewing administrative decisions." *T.P. ex rel. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (internal quotations omitted). The district court resolves such motions by preponderance of the evidence, but it must give "due weight" to administrative proceedings because "the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of education policy." *M.S. v. Yonkers Bd. of Educ.*, 231 F.3d 96, 102 (2d Cir. 2000).

**B. Substantive Requirements**

If a school district fails to provide a student with a FAPE, the district may be required to pay for private educational services obtained for that child. *See Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985); *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993). Before a school is required to pay for a program selected by a parent, a three-prong test, known as the *Burlington/Carter* Test, must be satisfied. In Prong I, a court must find that the district's IEP was inadequate or inappropriate. If the due process complaint is substantive rather than procedural, the reviewing court must find that the IEP was not reasonably calculated to confer educational benefit on the student. *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). During the administrative review, the school district has the burden of demonstrating the student was offered a FAPE, but during the district court review, the burden shifts to the parent to prove that the SRO ruled incorrectly. *See M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 225 n.3 (2d Cir. 2012). If a court finds the IEP adequate, then "the state has satisfied its obligations under the IDEA and the necessary inquiry is at an end." *M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000).

In Prong II, a parent must show that the private school's program was reasonably calculated to confer an educational benefit to the child. *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 365 (2d Cir. 2006). At a minimum, the program must "provide some element of special education services in which the public school placement was deficient." *Id.* (quoting *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 523 (6th Cir. 2003)). In Prong III, the court must determine whether equitable considerations support the parent's claim, including whether the parents acted unreasonably or failed to cooperate with school officials. *See* 20 U.S.C. §1412(a)(10)(C)(iii)(III).

A parent need not resolve all these issues before enrolling her child in a private education program. Dissatisfied parents may unilaterally place their child in private school and then seek retroactive reimbursement. 20 U.S.C. § 1412(a)(10)(C). However, parents who place their children "without the consent of state or local school officials [ ] do so at their own financial risk." *Burlington*, 471 U.S. at 374.

**THE INSTANT MOTIONS**

In their motion, Plaintiffs assert that C.C. was denied a FAPE due to: (i) procedural deficiencies in the April CSE, due to the failure to include C.C.'s teacher and the lack of classroom observation; (ii) deficiencies in the IEP since it could not be implemented at P.S. 11 according to the statements made by the principal; and (iii) the P.S. 2 placement was untimely as it was mailed after the beginning of the school year. (Dkt. No. 14.)

In its motion, DOE asserts that the evidence supports the SRO's findings on the procedural and substantive sufficiency of the April CSE. (*See* Dkt. No. 12.) Further, DOE argues that Plaintiffs' complaints about P.S. 11 are retrospective and impermissibly speculative. (*Id.*) DOE also argues that Plaintiffs were given timely notice of the P.S. 2 placement since the FNR was sent prior to the beginning of the school year. (*Id.*)

**DISCUSSION**

In this case, while the April CSE was procedurally deficient, the minor defects did not constitute a denial of FAPE. Further, Plaintiffs' objections to P.S. 11 are impermissibly speculative. Therefore, the IEP as offered to C.C. at P.S. 11 constituted a FAPE. While the analysis could end there, I also find that Plaintiffs were given appropriate notice of the P.S. 2 placement. Because I hold, on the basis of Prong I of the *Burlington/Carter* Test, that DOE did not deny C.C. a FAPE, I do not reach Prongs II or III: whether the Lang School was an appropriate placement and whether the equities support Plaintiffs' claim.

**A. The IEP**

Prong I of the *Burlington/Carter* Test requires a court to assess "(1) whether the state complied with the procedural requirements of IDEA, and (2) whether the challenged IEP was 'reasonably calculated to enable the child to receive educational benefits.'" *Walczak*, 142 F.3d at 129 (quoting *Board of Educ.v. Rowley*, 458 U.S. 176, 205 (1982)). Generally, state administrators' decisions on whether a student was denied a FAPE are afforded deference, "particularly . . . where [the IHO and SRO] are both in agreement." *C.H. v. Goshen Cent. Sch. Dist.*, 2013 WL 1285387 at *12 (Mar. 28, 2013); *see A.H. v. N.Y.C. Dep't of Educ.*, 394 Fed. App'x 718, 719-20 (2d Cir. 2010) (holding that the district court "failed to accord sufficient deference to the decisions of the Impartial Hearing Officer [] and State Review Officer [], both of whom concluded that the IEP offered [the student] a [FAPE]."); *see also Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 113 (2d Cir. 2007) ("[D]eference to the administrative proceedings is particularly warranted when the district court's decision is based solely on the administrative record.") (internal citations omitted). Even apart from the deference afforded to the concurring opinions of the IHO and SRO in this case, I find that the DOE adequately complied with the procedural requirements of IDEA and that the IEP was reasonably calculated to enable C.C. to receive educational benefits.

The first step in examining the adequacy of the IEP is determining "whether there were procedural violations of the IDEA, namely, 'whether the state has complied with the procedures set forth in the IDEA.'" *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 190 (2d Cir. 2012) (quoting *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005)). Under the IDEA, the IEP team (here, the April CSE) is to include at least one regular education teacher of the child and at least one special education teacher or provider of the child. 20 U.S.C. §1414(d)(1)(B)(ii) & (iii). The Official Analysis of Comments to the federal regulations

indicates that the special education teacher "should" be the person responsible for implementing the IEP. IEP Team, 71 Fed. Reg. 46670 (Aug. 14, 2006). In the instant case, the April CSE included a district special education teacher and a district regular education teacher.[3] The SRO found that, because the district special education teacher involved in the April CSE was not the one responsible for implementing the IEP, the teacher did not meet the regulatory criteria and that this constituted a procedural violation. (SRO Decision at 12.) I find that the April CSE was not constituted consistent with the procedural requirements of the IDEA.

However, procedural violations constitute denial of FAPE only "if they 'impeded the child's right to a [FAPE],' 'significantly impeded the parents' opportunity to participate in the decisionmaking process,' or 'caused a deprivation of educational benefits.'" *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d at 190 (quoting 20 U.S.C. §1415(f)(3)(E)(ii)).

Here, the procedural defect did not result in a denial of FAPE. The April CSE, while lacking a special education provider meeting the regulatory criteria, reviewed ample evaluative material from which to craft the IEP, including the March 2012 IEP developed by the CPSE, which itself was in part created by C.C.'s special education teacher one month prior to the April CSE's IEP and information provided by C.C.'s preschool providers. (*See* Pls. Ex. B & C.) *See also R.B. v. N.Y.C. Dep't of Educ.*, 15 F. Supp. 3d 421, 430 (S.D.N.Y. 2014) (AJN) (finding that the CSE's reliance, in part, upon progress reports created by the student's teacher "significantly mitigated" the absence of a special education teacher . . . who was not the student's "own special education teacher"). In addition, L.K. herself participated in the April

[3] Plaintiffs initially contended that Ms. Castillo, the district special education teacher, was not, in fact, a special education teacher. Dkt. No. 14 at 9-10. However, after the DOE produced Ms. Castillo's credentials (Dkt. No. 16 at Ex. A), Plaintiffs withdrew the contention (Dkt. No. 18 at 2).

CSE, expressing opinions and asking questions about the program and recommendations throughout the process. (Tr. 758-61 & 793-95.)

Plaintiffs also contend that the April CSE's failure to conduct a classroom observation of C.C. constituted a procedural violation denying him a FAPE. (Dkt. No. 14 at 10.) State and federal regulations require a CSE to consider classroom observations in an "initial" evaluation. 34 C.F.R. §300.305(a)(1)(iii); 8 NYCRR 200.4(b)(1)(iv), (b)(5)(i), & (b)(5)(ii)(b). The IHO and SRO found that the April CSE was not an "initial evaluation" requiring a classroom observation and that, even if it were, "the information before the CSE was adequate". (IHO Decision at 21; SRO Decision at 13.) In light of the IHO's and SRO's findings, I find that the April CSE was not an "initial evaluation" within the meaning of the statutory framework. Further, as noted by the IHO, even if the April CSE constituted an initial evaluation, the information before it was adequate, "in that it included a detailed report from [C.C.'s] special education teacher describing [C.C.'s] functioning within the school environment." (IHO Decision at 21.)

An IEP must also be "reasonably calculated to enable the child to receive educational benefits." *Board of Educ. v. Rowley*, 458 U.S. at 205. "A school district fulfills its substantive obligations under the IDEA if it provides an IEP that is 'likely to produce progress, not regression,' and if the IEP affords the student with an opportunity greater than mere 'trivial advancement.'" *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d at 195 (quoting *Rowley*, 458 U.S. at 201). Further, the IEP is to be provided in the "least restrictive environment," meaning that "[t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled". 20 U.S.C. §1412(a)(5)(A). The IHO and SRO found that "the recommended program provide[s] a small, structured program consistent with the description of Corbin's needs, as provided by the professionals who evaluated him . . . [and] the recommended

program, in a community school, is the least restrictive environment for [C.C.]" (IHO Decision at 23; SRO Decision at 14-23.) Noting that a district court should not "substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]," I hold that the DOE fulfilled its substantive obligations under the IDEA. *Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cnty. V. Rowley*, 458 U.S. 176, 206 (1982).

**B. <u>P.S. 11</u>**

Plaintiffs argue that the IEP was inappropriate because P.S. 11 would have been unable to implement it. (Dkt. No. 14 at 11.) Specifically, Plaintiffs allege that, considering the statements of P.S. 11's principal as recounted by L.K.,[4] as well as L.K.'s assertion that the school was too large and noisy, P.S. 11 "could not implement [C.C.'s] IEP." (*Id.* at 18.) The IHO and SRO held that, because C.C. never attended P.S. 11, the claim that it would have been incapable of implementing his IEP was impermissibly retrospective. (IHO Decision at 24; SRO Decision at 24-27.) The IHO explicitly "attach[ed] no weight to the hearsay statement" of P.S. 11's principal. (IHO Decision at 24.)

When a parent chooses to unilaterally place a child after rejecting the district's recommended placement and seek retroactive reimbursement, "the complaint must be based on defects in the IEP itself rather than from doubts about the specific school's ability to implement the IEP." *H.C. v. N.Y.C. Dep't of Educ.*, 2015 WL 1782742, *3 (S.D.N.Y. Apr. 10, 2015) (AKH). "Speculation" that the chosen school may be incapable of implementing the IEP "is not an appropriate basis for unilateral placement." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d at 195; *see also N.K. v. N.Y.C. Dep't of Educ.*, 961 F. Supp. 2d 577, 590 (S.D.N.Y. 2013) (JMF). As the Second Circuit clarified today in *M.O. v. N.Y.C. Dep't of Educ.*, "it is speculative to conclude

---

[4] Plaintiffs state that the principal told L.K. that: (i) C.C. did not seem like the right fit for P.S. 11; (ii) C.C. would be the only kindergartener in a class of second graders; (iii) the class was in danger of closing for low enrollment; and (iv) the other children in the class performed at a low level. (Pls. Ex. G.)

that a school with the *capacity* to implement a given student's IEP will simply fail to adhere to that plan's mandates". 14-1473-cv at pg. 14 (2d Cir. July 15, 2015) (emphasis added). As the Plaintiffs merely challenge the willingness of P.S. 11 to implement C.C.'s IEP—without pointing to any services set forth in C.C.'s IEP that P.S. 11 was not capable of performing—I hold that Plaintiffs' contentions as to its adequacy are impermissibly speculative.

Furthermore, the IHO was within her discretion to give no weight to the hearsay statements reportedly made by the principal. *See J.R. v. Board of Educ.*, 345 F. Supp. 2d 386, 399 (S.D.N.Y. 2004) ("[O]n . . . review of the IHO's decision, we accord the deference, traditional on appellate review, to his assessment of the credibility of those witnesses who testified before him."); *see also B.M. v. N.Y.C. Dep't of Educ.*, 2013 WL 1972144 (S.D.N.Y. May 14, 2013) (noting the "strong deference owed to an IHO's determination of credibility".). Even assuming the truth of the statements, however, regarding the class composition and danger of closure, the P.S. 11 placement would not have denied C.C. a FAPE. Plaintiffs argue that, because the class was allegedly in danger of closing, P.S. 11 could not have implemented the IEP. (Dkt. No. 14 at 17-18.) At the hearing, however, DOE official Eric Contreras confirmed that DOE had informed Plaintiffs that a seat for C.C. would be available in a 12:1:1, and that the services in C.C.'s IEP would be provided at P.S. 11. (Tr. 266-77.) Plaintiffs argue that the allegedly lower functional level of the class rendered it incapable of implementing the IEP. (Dkt. No. 14 at 17-18.) However, this court is "prohibited from evaluating the adequacy of an umimplemented IEP based on evidence about . . . [the] classmates in [the assigned] classroom." *R.B. v. N.Y.C. Dep't of Educ.*, 15 F. Supp. 3d at 436. Finally, Plaintiffs contend that the fact that C.C., a kindergartener, would be placed in a class of second graders rendered the placement unable to implement his IEP. (Dkt. No. 14 at 17-18.) State regulations, however, allow

differences in age that "shall not exceed 36 months". 8 NYCRR §200.6(h)(5). None of Plaintiffs' allegations, assuming without holding that they are true, establish a denial of a FAPE.

**C. <u>P.S. 2</u>**

Plaintiffs initially contended that the FNR informing them of C.C.'s placement at P.S. 2 was untimely because it was mailed the day after the first day of the school year. (Dkt. No. 14 at 19.) This contention was modified after the DOE showed that the school year did not begin on September 4, 2012, as alleged by Plaintiffs, but on September 6, 2012, the day after the FNR was mailed. (Dkt. No. 16 Ex. B.) Plaintiffs now argue that "[l]ogic dictates" that the P.S. 2 placement is still inadequate because they could not have received the letter earlier than the first day of school. (Dkt. No. 18 at 6.)

Because I find that the P.S. 11 FNR was sufficient and C.C. was therefore offered a FAPE in May 2012, Plaintiffs' contentions regarding the P.S. 2 FNR are irrelevant. I find, however, that the P.S. 2 FNR would itself have been adequate under the IDEA, had it been the only placement offer or had the P.S. 11 FNR been held insufficient.

The IDEA requires written prior notice to parents when the local educational agency "proposes to initiate or change" the "educational placement of the child". 20 U.S.C. §1415(b)(3)(b); *see* 34 C.F.R. §300.503(a)(1); *see also* 8 NYCRR §200.1(oo). In the context of the IDEA, the term "educational placement" refers not to "bricks and mortar" of a specific school, but to the "general educational program – such as the classes, individualized attention and additional services a child will receive". *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009); *See N.K. v. N.Y.C. Dep't of Educ.*, 961 F. Supp. 2d 577, 590 (2d Cir. 2013). The IDEA and New York law "only require[] that a school district have an IEP in effect at the beginning of the applicable school year." *K.L. ex rel. M.L. v. N.Y.C. Dep't of Educ.*, 2012 WL 4017822, at *16 (S.D.N.Y. Aug. 23, 2012) (KBF) (internal citations omitted).

Plaintiffs' arguments that the P.S. 2 placement notice was untimely because it was "too late for the parent to enroll the child, and too late for the parents to object to the placement" are belied by the fact that Plaintiffs toured P.S. 2 and did, in fact, object to the placement. (*See* Pls. Ex. R.) In this case, with respect to P.S. 2, DOE did all that was required of it, having put an IEP in place by the beginning of the school year. Plaintiffs' substantive objections to P.S. 2 revolve around alleged differences between C.C. and the students in the P.S. 2 class. As explained above, this court cannot evaluate the adequacy of a proposed placement based on evidence regarding the students in the assigned classroom. *R.B. v. N.Y.C. Dep't of Educ.*, 15 F. Supp. 3d at 436.

For the above reasons, I find that the P.S. 2 FNR was timely, and that Plaintiffs' substantive complaints regarding P.S. 2 are impermissibly speculative.

**CONCLUSION**

For the foregoing reasons, I hold that the State Review Officer did not err in finding that C.C. was offered a FAPE for the 2012-2013 school year. Accordingly, the DOE's motion for summary judgment is granted and Plaintiffs' motion is denied. The Clerk shall mark the motions (Dkt. Nos. 11 & 13) terminated, enter judgment for the Defendant, and mark the case closed.

SO ORDERED

Dated: New York, New York
July 15, 2015

ALVIN K. HELLERSTEIN
United States District Judge